UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JARVIS BALLARD                                                                   CIVIL ACTION

VERSUS                                                                                    NO. 05-2454

N. BURL CAIN, WARDEN                                                    SECTION "S"(6)


**SECOND REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  For the reasons set forth below, it is recommended that the instant petition be **DENIED WITH PREJUDICE**.

## **I. PROCEDURAL HISTORY**[1]

Petitioner, Jarvis Ballard, is a prisoner presently incarcerated in the Louisiana State Penitentiary, located in Angola, Louisiana. On January 21, 1998, petitioner, along with Ulysses "Noon" Pierre and Sidney "Bird" Williams, was indicted for aggravated rape. On July 21, 1999, following a three-day jury trial in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana, petitioner, along with Pierre, was found guilty as charged.[2] All three defendants were sentenced to life imprisonment. On July 25, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed all three defendants' convictions and sentences. *State v. Pierre*, 792 So.2d 899 (La. App. 4 Cir. 2001). On September 13, 2002, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his conviction and sentence final. *State v. Ballard*, 824 So.2d 1189 (La. 2002).

On or about August 8, 2003, petitioner filed with the state district court an application for post-conviction relief.[3] Petitioner's efforts in this regard culminated on

---

[1] A portion of the procedural history was taken from the Louisiana Fourth Circuit Court of Appeal's decision, *State v. Pierre,* 792 So.2d 899, 900-901 (La. App. 4 Cir. 2001).

[2] Williams was likewise tried by a jury and found to be guilty as charged.

[3] A copy of petitioner's post-conviction application is contained in the State rec., vol. 10 of 10. August 8, 2003 represents the date petitioner executed his affidavit attesting to the accuracy of the information set forth in his post-conviction application and to his financial inability to employ counsel in connection with his post-conviction proceeding.

2

May 6, 2005, when the Louisiana Supreme Court denied his writ application. *State ex rel. Ballard v. State*, 901 So.2d 1082 (La. 2005).

In June, 2005, petitioner filed the instant federal habeas corpus action, raising the following claims: 1) The state courts erred in rejecting his challenge to the constitutionality of the composition of both the grand jury and petit jury venire; 2) there was insufficient evidence to support his conviction; and, 3) the state courts erred with regard to the ultimate decision rejecting his motion to sever his trial from his co-defendants' trials. On December 1, 2006, the undersigned magistrate judge issued a Report and Recommendation (rec. doc. 7), finding that while petitioner presented his first two claims to the Louisiana Supreme Court via his direct appeal proceedings, he did not present his third claim to the state high court. Accordingly, petitioner did not, as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), exhaust his state court remedies and, therefore, the court recommended that petitioner's habeas application be dismissed without prejudice.

In response to the magistrate judge's Report and Recommendation, petitioner, on December 20, 2006, filed a pleading (rec. doc. 8) seeking to abandon his third, unexhausted claim, and proceed with his two exhausted claims. In accordance with petitioner's request, the district court, on January 18, 2007, issued an Order (rec. doc. 9) allowing petitioner to proceed with his two exhausted claims and referring the matter to the undersigned magistrate judge for the purpose of issuing a second Report and

Recommendation addressing the merits of the two exhausted claims.  However, before proceeding to the merits, this court shall first review the applicable facts, along with the pertinent standard of review.

## II.  FACTS[4]

On January 10, 1998 the victim, Noreen Dimitrios, a sixty-year old woman, was babysitting her three-year old grandson at her home in Violet, Louisiana.  The two were sleeping when the victim was awakened by a knock at the door.  Thinking it was her son coming for her grandson, the victim opened the door only to be greeted by a stranger.  The stranger, whom she identified as Ballard, shoved the door pushing her back into the house.  Ballard was followed into the residence by a second perpetrator, whom the victim identified as Pierre.  The three proceeded into the bedroom where the baby was sleeping.  Ballard instructed Pierre to hold the victim, and he grabbed her from behind choking her.  The victim struggled to free herself and fell to the floor.  Ballard interrogated the victim regarding the location of her valuables and the location of an alleged safe.  She told them that she did not have any money, only credit cards and to take them.  She also told them that she did not have a safe.  Ballard began ransacking the bedroom in an attempt to locate valuables, and then told Pierre to rape the victim.  Pierre complied and vaginally raped her.  The victim noted that the light was on in the room and that she could see both

---

[4]The pertinent facts were obtained from the Louisiana Fourth Circuit Court of Appeal's opinion, *State v. Pierre*, 792 So.2d 899, 901-903 (La. App. 4 Cir. 2001).

Ballard and Pierre without any difficulty.  Indeed, when Pierre raped her, she was on her back, and Ballard was standing over the bed holding a pillow as if prepared to smother her.

Subsequently, the child began to stir and the victim comforted him.  The victim believed that the perpetrators had not previously been aware of the child's presence.  The defendants then began going in and out of the room.  Ballard then had the victim get on her knees and he raped her anally from behind.  The defendants continued to ask her about the safe and if she had any money, guns or drugs.  One of the defendants had her get on her knees and he inserted his hands into her vagina as if to see if she was hiding something.  Up to this point, the victim had a full view of Ballard and Pierre; then a third subject entered the room and told her not to look at him and placed his penis in her mouth and had her perform fellatio.  They attempted to bind her hands with an electrical cord.  While on the bed face down, a second incidence of sodomy occurred, and the victim noted a different voice.  The victim was then forced into a closet.  She heard the child cry out.  She came to his aid, when Williams, she believed, pushed her down on the bed, retied her hands, and placed a pillowcase over her head.  Subsequently, Williams, she believed, reentered the room and placed something hard against her head, saying he was going to have to kill someone and told her that he was going to count to three and she was going to tell him where the safe was.  He said "one", and she continued to tell him that she did not have a safe.  After "two", she remained silent.  The victim believed he

was finally convinced.  Subsequently, the victim heard her stereo equipment being pulled out and then no more sounds.  She called 911 and her son.  The police arrived as well as an ambulance that took her to the hospital.

The victim also related that during the attack, Pierre pulled the ring from her finger, lacerating it, after she could not get it off.  The victim believed that the entire incident lasted twenty-five minutes.

Following her examination at the hospital, the victim gave a statement to the police and identified Ballard and Pierre from photographic lineups.

Yolanda Caesar, a neighbor, testified that on the night in question she was at home sleeping when she was awakened by Pierre at her door at approximately 1:00 a.m.  Pierre requested to see her son, but because of the late hour, she declined Pierre's request.  Shortly thereafter, Ms. Caesar, finding her encounter with Pierre strange, looked out of the window and observed an automobile with the figure of a girl seated in the vehicle.  Then she observed Pierre run from the victim's house and put something in the vehicle.  Realizing something was going on, she awakened her son, Louis Caesar, to have a look.  At her son's request, she telephoned the police and reported what she believed to be a burglary in progress at the victim's house.

Louis Caesar testified that after being awakened by his mother, he observed a subject carrying items back and forth to the vehicle, whom he presumed was Pierre

because of a red sweatshirt he was wearing and because his mother had identified him. Furthermore, he observed a total of three people leave the victim's house. He was not able to identify anyone else though, as they had their jackets pulled up over their heads.

Detective Scott Davis of the St. Bernard Sheriff's Office testified that he took a statement from Ballard wherein Ballard admitted going to the victim's house at the request of his two co-defendants to commit a robbery. In callous language, Ballard further admitted having non-consensual intercourse with the victim, but claimed he did not ejaculate.

Officer Albert Calvin of the St. Bernard Sheriff's office testified that at about the same time that Ballard was giving his statement, he took a voluntary statement from Pierre. The statement was introduced into evidence. In it, Pierre admitted raping and robbing the victim. He also admitted hiding the stolen property behind the house of Tracy Richard.

Officer John Graf of the St. Bernard Parish Sheriff's Office testified in Ballard and Pierre's trial that at the direction of Detective Davis he obtained a search warrant for the residence of Tracy Richard and located, in the shed behind the residence, stereo speakers, a cassette player, and a CD player belonging to the victim. He further testified that he recovered a ring belonging to the victim at Ballard's sister's house.

Ballard called Detective Ray Whitfield, who testified that the affidavit executed in connection with the arrest warrant for Pierre stated that the victim reported that she was assaulted by two perpetrators. Detective Whitfield further testified that when he interviewed the victim approximately two weeks after the crime, she felt that three subjects were involved and that she recalled three distinct voices. Detective Whitfield further testified that Williams denied in his statement to police that Ballard was involved. At Williams' trial, Whitfield testified that Williams turned himself in and gave a voluntary statement admitting that he participated in the robbery, but claiming that he did not rape the victim.

Julie Golden, an expert in DNA analysis, among other things, testified in Ballard and Pierre's trial that sperm samples collected from the scene matched Pierre. She stated that the chance that someone else from the African American population would share the same profile as Pierre was one in 1.8 million. In Williams' case, she testified that he was included as a possible source of the DNA recovered from one of the samples, while 98.5% of the population would be excluded.

Ballard testified in his own defense that he made the statement in question to the officer, but that he was coerced into giving it. He stated that he was kicked in the groin and verbally intimidated. As to the contents of the statement, he claimed that Detective Davis provided him with the facts. Ballard did admit that the portion of his

statement that Pierre and Williams approached him to "hit" a house nearby did occur, but he declined. He also stated that Williams was his sister's boyfriend and that Tracy Richards was his sister's friend. Ballard introduced medical records from an operation to repair a hernia after he was incarcerated. Ballard admitted that the records do not reflect that he had been kicked.

Ballard's mother, Linda Ballard, testified that her son came home that evening from a party between 12:30 or 1:00 a.m. She stated that she checked on him around 3:00 a.m. when James Haynes, who lived with her, left the house to go to work. She also related that Pierre is her nephew.

James Haynes, called by the defense, testified that he left the house to go to work at approximately 1:00 a.m. He stated he could not have left as late as 3:00 a.m.

The State introduced a 911 log, which reflected that Yolanda Caesar called at 2:55 a.m.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed

questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

### A. Unconstitutional Composition of Grand Jury and Petit Jury

#### 1. Grand Jury

Petitioner claims that he is entitled to habeas corpus relief because the grand jury which indicted him was unconstitutionally selected. Petitioner, however, failed to raise the instant claim in a pre-trial motion to quash, as required under Louisiana law. *See* La.C.Cr.P. arts. 533(1) and 535(D); *see also Deloch v. Whitley*, 684 So.2d 349, 349-350 (La. 1996). As such, the Louisiana Fourth Circuit Court of Appeal declined to address the merits of petitioner's claim, rejecting petitioner's contention that he preserved the issue for review when he raised it in a motion for a new trial and when he objected to the composition of his petit jury. The court stated:

> The filing of a post verdict motion for new trial is not sufficient to preserve the issues for appeal for the claim was waived by failing to file a timely motion to quash. Additionally, objecting to the composition of the petit jury venire does not preserve the issue because the objection does not relate to the composition of the grand jury.

*Pierre*, 792 So.2d at 907.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both

independent of the merits of the federal claim and adequate to support that judgment. *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), *citing Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  *Amos*, 61 F.3d at 338 (citations omitted).  As explained in *Coleman v. Thompson*, 501 U.S. 722, 730-31, 111 S.Ct. 2546, 2554, 115 L.Ed .2d 640 (1991):  "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity....  Without the rule, ... habeas would offer state prisoners whose custody was supported by independent and adequate state grounds ... means to undermine the State's interest in enforcing its laws."

As noted earlier, the state appellate court, addressing petitioner's grand jury challenge in connection with his direct appeal, found that petitioner had waived his challenge due to his failure to raise it in a timely motion to quash prior to trial.  The United States Fifth Circuit Court of Appeal has clearly provided that the above procedural bar "provides an 'adequate and independent' state law ground" for denying a constitutional challenge to the grand jury composition.  *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997).  As such, federal habeas review is barred absent a showing of both "cause" for the default and "prejudice attributed thereto", or a demonstration that the federal court's failure to review the defaulted claim will result in a "fundamental

miscarriage of justice." *Amos*, 61 F.3d at 338-39; *Harris*, 489 U.S. at 262, 109 S.Ct. at 1043; *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed. 783 (1982).

In the instant matter, petitioner has not demonstrated the requisite cause and prejudice, as such, the instant claim is procedurally barred unless he can show that a fundamental miscarriage of justice would result. In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001) (*citations omitted*). Petitioner, in this instance, has made no such showing. Accordingly, the instant claim is subject to dismissal.

### 2. Petit Jury

Petitioner argues that the jury pool, from which the members of his petit jury were chosen, did not meet the constitutional requirement that a jury be selected from a fair cross-section of the community. Specifically, petitioner contends: "When fifty-four prospective jurors [are] called and only five of them ... [are] African American, the jury ... pool does not meet the fair cross-section requirement to petit jury selections...."[5] As

---

[5] Federal rec. doc. 1, petitioner's "Memorandum of Law in Support of Petition for Writ of Habeas Corpus" at p. 7.

shown below, petitioner's general statement in this regard is insufficient to meet his burden of proof.

A criminal defendant has a right, under the Sixth and Fourteenth Amendments, to a petit jury selected from a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In order to make the necessary prima facie case that a State has violated "the fair-cross-section requirement", a petitioner must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

The Louisiana Fourth Circuit, in addressing the instant issue, noted that petitioner's allegation to the effect that "[o]f the 54 prospective jurors ... five were black", meant that the jury pool in his case actually consisted of a greater percentage of blacks (9.25%) "than the percentage of the total black population over the age of eighteen of St. Bernard Parish (6.5%) from the 2000 census." *Pierre*, 792 So.2d at 907 n.8. The court subsequently rejected petitioner's argument, concluding that he had "failed to shoulder even a colorable claim regarding the composition of the jury venire." *Id.* at 908. Clearly, the state appellate court's conclusion in this regard does not represent an unreasonable application of Supreme Court law. Accordingly, petitioner's contention that he is entitled

to habeas corpus relief based upon the alleged unconstitutional composition of his petit jury pool is without merit.

### B. Insufficiency of Evidence

Petitioner claims that insufficient evidence was offered to support his aggravated rape conviction. In support of his claim, petitioner offers the following arguments: 1) His confession was coerced; 2) there was no evidence linking him to the crime scene, specifically, no forensic evidence, none of the stolen property was found in petitioner's possession and, while the victim contracted gonorrhea, a test showed that petitioner did not have gonorrhea; 3) his mother, Linda Ballard, testified that he was at home when the crime was committed; 4) the photograph which the victim used to identify him in a photographic lineup was dark and blurry; 5) the victim's testimony that she was assaulted by three perpetrators was unbelievable in that she initially reported that she was assaulted by only two perpetrators; and, 6) the Caesars only saw two male perpetrators.[6] When conducting a post-AEDPA sufficiency of the evidence review, a federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case. *See* 28 U.S.C. § 2254 (d)(1).

---

[6]*See* Federal rec., doc. 1, petitioner's "Memorandum of Law in Support of Petition for Writ of Habeas Corpus" at pp. 8-9 and 10.

In its analysis of petitioner's insufficiency of evidence claim, the Louisiana Fourth Circuit Court of Appeal first set forth the applicable Supreme Court law, along with corresponding state law, stating:

> The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jacobs,* 504 So.2d 817 (La.1987).

*Pierre*, 792 So.2d at 904.

The state appellate court then addressed petitioner's specific arguments. With respect to petitioner's challenge based upon the poor quality of the photograph used in connection with the victim's identification of petitioner in a photographic lineup, the court first noted that petitioner was not claiming that the trial court erred in denying his motion to suppress the photographic identification. Second, the court reasoned that any alleged deficiency in the victim's photographic identification of petitioner was overcome by the victim's positive in-court identification of petitioner as one of the perpetrators. *Pierre*, 792 So.2d at 905.

With respect to petitioner's challenge based upon the allege coercion of his confession, the court reasoned: "The jury heard from both Ballard and the officer who took ... Ballard's statement. The jury's decision to reject Ballard's story and find that the

16

statement was voluntary was a credibility determination, which cannot be set aside by this court." *Id.*

With regard to petitioner's challenge based upon the victim's initial identification of only two perpetrators, the court observed: "The fact that the victim initially told the police that she was assaulted by two people has little to do with Ballard's conviction. He was positively identified by the victim." *Id.* Similarly, petitioner's challenge based upon the Caesars' alleged identification of only two perpetrators is undermined by the fact that contrary to petitioner's assertion, Louis Caesar testified that he observed three males exit the victim's house. *Id.*[7]

With respect to the alibi provided for petitioner by his mother, Linda Ballard, the court determined that "it was not unreasonable for the jury to discount the alibi testimony" given the sharp conflict between Ballard's testimony and the testimony offered by James Haynes, Ballard's boyfriend at the time of the incident. *Id.* Specifically, a review of the pertinent transcript reflects that Linda Ballard testified that she let petitioner in the house around 12:30 or 1:00 a.m. and, shortly thereafter, petitioner "went to bed".[8] According to Ballard, petitioner remained in bed until 3:00 a.m., stating that she knew petitioner was in his room at this time because she checked on him when

---

[7]*See also* State rec., vol. 9 of 10, trial testimony of Louis Caesar at p. 9, lines 31-32; p. 10, lines 1-12.

[8]*See* State rec., vol. 7 of 10, trial testimony of Linda Ballard at p. 394, lines 20-28.

17

her boyfriend, James Haynes, "got up to go to work" at 3:00 a.m.[9] The veracity of this testimony, providing petitioner with an alibi for the period from 1:00 to 3:00 a.m., when the incident at issue took place, was significantly undermined by the fact that it was in conflict with the testimony of James Haynes who stated that he left for work at 1:00 a.m., not 3:00 a.m.[10]

       Finally, the fact that none of the property stolen from the victim's house was found in petitioner's possession, that the victim did not contract gonorrhea from petitioner, and that there was no forensic evidence linking petitioner to the crime scene, does not warrant a finding that there was insufficient evidence to support petitioner's aggravated rape conviction. Aggravated rape is defined, in pertinent part, under LSA-R.S. 14:42, as "a rape committed ... where the anal, oral or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed ... [w]hen two or more offenders participated in the act." In the instant matter, the victim testified that co-defendant, Ulysses Pierre, vaginally raped her while petitioner stood over her, then petitioner sodomized her. The victim further stated that she got a good look at both of the perpetrators' faces, as the bedroom light, along with light from the den and light from the front porch illuminated the area where the rapes occurred. There was no doubt in the

---

[9]*See* State rec., vol. 7 of 10, trial testimony of Linda Ballard at p. 395, lines 10-12.

[10]*See* State rec., vol. 7 of 10, trial testimony of James Haynes at p. 412, lines 18-20; p. 414, lines 1-8; p. 415, lines 11-14.

victim's mind that petitioner and Pierre were two of the men who raped her.[11]  Clearly, the victim's positive identification of petitioner and her testimony regarding the heinous actions which petitioner took against her, were sufficient to support petitioner's aggravated rape conviction.

Based upon the above, this court finds that the Louisiana Fourth Circuit's rejection of petitioner's insufficiency of evidence claim does not represent an unreasonable application of Supreme Court law to the pertinent facts.  *See Hill*, 210 F.3d at 485.  As such, the instant claim is without merit.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Jarvis Ballard for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v.*

---

[11]*See* State rec., vol. 9 of 10, trial testimony of the victim, Noreen Dimitrios, at pp. 17-21.

*United Services Auto. Ass'n*, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this  21st  day of       April      , 2008.

_____
LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE